UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCIEANN TALAMANTES, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PPG INDUSTRIES, INC.,<br><br>    Defendant. | Case No. 13-cv-04062-WHO<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS AND CORRECTIVE NOTICE; DENYING MOTION TO COMPEL DEPOSITION**<br><br>Re: Dkt. Nos. 54, 73 |

**INTRODUCTION**

After I conditionally certified a collective action and approved notice procedures in this Fair Labor Standards Act ("FLSA") suit, defendant PPG Industries, Inc. sent an email to potential plaintiffs discussing the litigation and the forthcoming notice that the potential plaintiffs would receive. The plaintiffs move to sanction PPG, arguing that the email misled potential plaintiffs, deterred them from opting into the lawsuit, and violated the parties' stipulation regarding communications with the potential plaintiffs and. The plaintiffs' motion is DENIED because the email did not mischaracterize or otherwise undermine the forthcoming notice, nor did it violate the stipulation.[1]

---

[1] On July 30, 2014, plaintiffs filed a motion to take the deposition of Cathie McKinley, the employee who sent the email. Dkt. No. 73. In light of this order, that motion is DENIED AS MOOT. Plaintiffs can take McKinley's deposition in the ordinary course of discovery. To the extent that the deposition uncovers facts relevant to a corrective notice, the plaintiffs can renew their motion at that time.

**BACKGROUND**

In 2013, PPG acquired the architectural coatings business (e.g., paints and stains) of Akzo Nobel. The acquisition included Business Development Representatives (sometimes referred to below as "BDRs") who promoted the sale of Glidden-brand paint at The Home Depot stores. At the time of the acquisition, PPG already employed Territory Managers who promoted the sale of Olympic-brand paint at Lowe's Home Improvement and Menards stores. The Territory Manager position was similar to the Business Development Representative position. PPG classified its Territory Managers as salaried non-exempt and eligible for overtime compensation. In contrast, at the time of the acquisition, the Business Development Representatives were not classified as salaried non-exempt and eligible for overtime compensation.

Effective April 1, 2013, PPG reclassified the Business Development Representatives as salaried non-exempt and eligible for overtime compensation. PPG explained the reclassification in an April 4, 2013 letter from Catherine McKinley, Director of PPG's Home Depot Business Line, to the Business Development Representatives, stating:

> As many of you know, PPG has employees who are in positions that are very similar to yours and who drive the sales of Olympic paint and stains in Lowe's and Menards stores. PPG classifies these employees as salaried non-exempt. In order to bring the BDR position into alignment with similar positions at PPG, the Business Development Rep position will be classified as salaried "non-exempt" effective April 1, 2013.

McKinley Decl. ¶ 12, Ex. 2.

In September 2013, a group of Business Development Representatives filed suit against PPG, alleging that prior to the reclassification, PPG misclassified the Business Development Representatives as exempt under the Fair Labor Standards Act, and therefore failed to pay the Business Development Representatives for all hours worked. Dkt. No. 1.

On April 30, 2014, I endorsed the parties' stipulation for conditional certification of a collective action and for the content of notice and opt-in consent forms to be mailed to potential plaintiffs. Dkt. No. 42, Stipulation Regarding Notice and Consent Procedures; Order. The stipulation provides that:

> The notice and consent form will be the only unsolicited communication to such individuals about the lawsuit during the opt-in period (*i.e.*, there will not be a "reminder" mailing, telephone solicitations, etc.). However, Plaintiffs and Plaintiffs' counsel may speak about the litigation with individuals who complete, sign and return the consent form or who otherwise affirmatively contact Plaintiffs or Plaintiffs' counsel with regard to the litigation.

Stipulation ¶ 7.

The stipulation also provides that "[d]uring the opt-in period, Defendant and its counsel may not discourage potential opt-in plaintiffs from participating in the lawsuit or initiate communications with the potential opt-in plaintiffs regarding the litigation." Stipulation ¶ 5. The opt-in period is defined as "the period of time between the date the notice and consent form is first mailed pursuant to Paragraph 3 and the date that is sixty (60) days thereafter." Stipulation ¶ 2. The plaintiffs mailed the notice and consent forms on May 21, 2014. *See* Dkt. No. 55, Plaintiffs' Motion to Shorten Time ¶ 6. Accordingly, the opt-in period ran from May 21, 2014 until 60 days later, July 20, 2014.

On May 15, 2014, six days before the opt-in period commenced, McKinley sent an email to PPG's Business Development Representatives —the potential plaintiffs—stating:

> From: McKinley, Catherine
> Sent: Thursday, May 15, 2014 12:01 PM
> Subject: Information About Overtime Lawsuit
>
> As you may know, in connection with the Akzo Nobel acquisition in 2013, PPG made the business decision to change the classification of the Home Depot Team BDR's (now known as Territory Managers) to "nonexempt" and eligible for overtime compensation. Our objective was to align the status of the Home Depot BDRs/TMs with the overtime eligible status of PPG's existing Territory Manager teams.
>
> Subsequently, some of the BDRs filed a lawsuit against PPG in California challenging Akzo Nobel's previous decision to classify BDRs as "exempt" from overtime.
>
> PPG's position in this lawsuit is that during the time that the Home Depot Team BDRs were classified as "exempt" before April 2013, they were paid a salary for all hours. PPG intends to defend this position in court.
>
> Individuals who worked for Akzo Nobel as Home Depot Team BDRs from April 30, 2011 through March 31, 2013 will soon be receiving a notice of the lawsuit in the mail. The notice will describe the lawsuit and provide instructions on the procedure for joining the lawsuit against PPG if the individual wants to do so.

3

> The decision whether to join the lawsuit against PPG is up to each individual. PPG will not retaliate against anyone because of his or her decision whether to join the lawsuit against the company.
>
> Cathie McKinley
> Director

McKinley Decl. ¶ 3, Ex. 1.

Plaintiffs contend that the email was improper for three reasons: (i) it was intended to mislead potential plaintiffs and deter them from opting into this action, (ii) it violated the stipulated prohibition on communications with potential class members, and (iii) it constituted communications with represented parties in violated of the Rules of Professional Conduct. Plaintiffs seek sanctions in the form of:

- Requiring PPG to send a corrective notice to all persons who received the email;
- Extending the opt-in period for an additional 15 days after the corrective notice is sent or 15 days after the current opt-in deadline, whichever is later;
- Barring PPG from communications with potential plaintiffs regarding the lawsuit;
- Ordering PPG to pay plaintiffs' reasonable attorney's fees and costs for the sanctions motion.

Plaintiffs also request that I reserve ruling on whether additional plaintiffs should be allowed to opt-in post-verdict should the plaintiffs ultimately prevail in this action.

## LEGAL STANDARD

Courts have the authority to govern the conduct of counsel and parties in FLSA Section 216(b) collective actions. *See, e.g., Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 171 (1989)). Courts may prohibit and correct communication that is misleading, coercive, or discourage participation in the lawsuit. *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 922 (11th Cir. 2014). A court order restricting communication with putative class members must be grounded in "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981).

## DISCUSSION

### I. THE EMAIL DID NOT MISLEAD OR DETER

Defense communication with the putative class in a Section 216(b) action is permissible

4

without plaintiff counsel's permission, so long as the communication does not "undermine or contradict the court's own notice." *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002).

Plaintiffs point to three statements in the email which they claim were misleading:

- Plaintiffs contend that the email's assertion that PPG's reclassification of the BDRs as nonexempt was a mere business decision "serves to preempt the reasonable inference that the reclassification was instead motivated by PPG's recognition that the BDRs were misclassified;"
- Plaintiffs contend that the email's reference to the lawsuit being filed in California, "is likely to mislead BDRs outside of California to believe that they are not eligible to opt into the class, making them less likely to examine the official notice when it arrives";
- Plaintiffs contend that the email's statement that the BDRs were paid a salary for all hours "is overly simplistic and misleading – implying that the fact the BDRs were paid a salary determines that they were not misclassified."

Plaintiffs also contend that the encrypted nature of the email was intended to be a "show of force," which "likely" deterred BDRs from participating in the lawsuit.

I disagree. *First*, PPG's statement that its reclassification of the BDRs was a "business decision" is consistent with how PPG described the reclassification to the BDRs at the time of the reclassification. At the time, PPG stated that the reclassification was intended "to bring the BDR position into alignment with similar positions at PPG." McKinley Decl. ¶ 12, Ex. 2. Accordingly, to the extent that there is a "reasonable inference that the reclassification was instead motivated by PPG's recognition that the BDRs were misclassified," that inference already had to compete with PPG's prior statement describing the purported reasons for the classifications. Moreover, the accused email states that the lawsuit challenges the prior decision to classify the BDRs as exempt from overtime, making it clear that whether the BDRs were properly classified is central to the lawsuit.

*Second*, it is accurate that the suit was filed in California. The Court-authorized notice which potential plaintiffs will receive itself states that the suit was filed in the United States District Court for the Northern District of California. The notice also states that the lawsuit is open to persons who were employed as BDRs "within the United States." Dkt. No. 42-1 at 1. Plaintiffs provide no support for their contention that the email will mislead BDRs outside of

California to believe that they will not be eligible to opt into the collective action, and I do not believe that it will.

*Third*, the email states that PPG's "*position*" is that BDRs were paid a salary for all hours and that "PPG intends to defend this position in court." That is consistent with the description of PPG's position in the notice, and therefore does not undermine the notice.

*Fourth*, I am not persuaded that the encrypted nature of the email itself makes the email improper. It is the substance of the email that matters; not the security afforded to it. In addition, the email states that "PPG will not retaliate against anyone because of his or her decision whether to join the lawsuit against the company," softening any intimidation which the encryption may have conveyed.

The cases cited by plaintiffs do not support their position. In *Billingsley*, 560 Fed. Appx. 914, the defendant executed arbitration agreements with potential plaintiffs after the action was filed, but before the district court certified the FLSA collective action. *Id.* at 918. The defendant told potential plaintiffs that signing the arbitration agreements was a condition of continued employment. *Id.* at 919. The court found that these arbitration agreements were "unconscionable as a matter of law" and "confusing, misleading, coercive, and clearly designed to thwart unfairly the right of managers to make informed choice as to whether to participate in collective action." *Id.* at 919, 922. In *Veliz v. Cintas Corp.*, 2004 WL 2623909, at *3 (N.D. Cal. Nov. 12, 2004), the defendant CEO mailed a letter to potential plaintiffs stating that "we think everyone will see the allegations of this lawsuit for what they really are, baseless." The defendant also interfered with potential plaintiffs' ability to opt-in by not providing their mailing information to plaintiffs.

Unlike *Billingsley* and *Velix,* the communication at issue here did not condition continued employment on not joining the action, nor did it malign the plaintiffs' position. In contrast, the communication here is more like the communication in *Parks*. There the defendant sent its employees/prospective plaintiffs an internal memorandum about the case, advising employees that they could contact the defendant's general counsel to answer any questions they might have. 235 F. Supp. 2d at 1085. The court concluded that the internal memorandum did not undermine or contradict the Court's own notice because it did not state legal advice and the defendant's

6

suggestion to direct questions to its general counsel "is permissible at this pre-opt in stage." *Id*. The court also determined that "[t]here is no substantial suggestion of retaliation if an employee opts-in. There does not appear to be serious or undue prejudice or an actual or potential abuse or misconduct as a result of the communication." *Id*.

The other cases cited by plaintiffs address Rule 23 class action, not FLSA collective actions, but they are equally unhelpful to plaintiffs. For example, in *Mevorah v. Wells Fargo Home Mortgage, Inc., a div. of Wells Fargo Bank*, 05-cv-1175 MHP, 2005 WL 4813532, *3 (N.D. Cal. Nov. 17, 2005) the defendant, through counsel, advised potential plaintiffs that the lawsuit sought to have the potential plaintiffs' positions changed to become eligible for overtime rather than the present exempt commission-based structure, which may result in "a system of time-monitoring, payment of overtime, as well as some lunch period regulation." 2005 WL 4813532, at *4. The Court found that this communication "could easily give a potential class member the mistaken impression that if the lawsuit were successful, [potential plaintiffs] would be paid on an hourly basis instead of by commission." *Id.* (internal quotations omitted). One potential plaintiff provided a declaration stating that she had been given that impression.[2]

In *Wright v. Adventures Rolling Cross Country, Inc.*, No. 12-cv-0982-EMC, 2012 WL 2239797, at *5-6 (N.D. Cal. June 15, 2012), a representative from the defendant emailed putative class members requesting they make a statement of intent not to participate and described the lawsuit as a "legal 'fishing' expedition" that could drive it and similar companies out of business. *Id.*, at *2. In addition, the defendant's president wrote to class members, asking them to withdraw and defendant's counsel warned class members to beware the exposure the lawsuit would bring. *Id.*, at *4. In *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 666 (E.D. Tex. 2003), the court found that the defendant's letter to the potential plaintiffs "misrepresented many of the issues in this action in such a way as to discourage absent class members from joining the suit." The court identified at

---

[2] *Mevorah* involved a putative Rule 23 class, not a Section 216(b) FLSA action, though the Court "d[id] not find it necessary to distinguish between certification of an 'opt-out' class under Rule 23 and an 'opt-in' class under section 216(b)" to determine whether the communication was misleading. *Mevorah*, 2005 WL 4813532, *1 n.1.

7

least five problems with the letter: (i) the letter implied that the lawsuit "was an attack on the potential plaintiffs' status as professionals," whereas, in reality, the action did nothing "to denigrate potential class members' workplace roles"; (ii) the defendant misrepresented the amount of damages available to the potential plaintiffs by incorrectly representing that the plaintiffs sought only the overtime due for a forty-hour workweek as reduced by attorneys' fees, ignoring recoverable liquidated damages and attorneys' fees; (iii) the letter equated the action with a medical malpractice suit—it stated that "this case is not unlike the medical malpractice lawsuits you may be familiar with"—even though the case alleged unpaid wages, not medical malpractice; (iv) the letter's "tone tapped into the possibility of the medical community's disfavor with the Plaintiffs' bar," for example declaring that the plaintiff "hired a plaintiff's lawyer to ask a court to award her money," and that "some portion of the Court's award presumably will be paid to the Plaintiff's attorney as fees"; and (v) the letter suggested that the suit could endanger the potential class members' job stability because it stated that "it is unclear how the Court's rulings may impact clinical operations on a going forward basis." *Belt*, 299 F. Supp. 2d 664, 666-67; *id.* nn.4-6. The court concluded that the defendant "could have no purpose but to discourage absent class members from joining the suit when it misrepresented damages available and preyed upon the absent class members' fears and concerns." *Id*. at 669.

In *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373 (S.D. Ga. 2009), defendants traveled to the homes of two potential plaintiffs—seasonal worker—in Mexico, asked them to sign a declaration that they were not participating in the lawsuit, and took a picture of one potential class member's family. *Id.* Defendants called a third seasonal worker, who was living in El Salvador, and asked him also to affirm that he was not participating in the lawsuit. *Id.* at 1377. The court found that this communication was coercive because (i) defendants could be a future employer of the putative plaintiffs' (ii) two of the solicitations occurred in person; and (iii) the plaintiffs testified that they feared refusing the defendants. *Id.* at 1381. The court also found the communications were potentially abusive because, if unchecked, they would threaten the ability of plaintiffs and potential plaintiffs to assert their rights through litigation. *Id.*

Unlike those cases, the communication at issue here did not mischaracterize the action,

threaten retaliation, or otherwise undermine the Court-approved notice.  While the timing of the email properly raises skepticism concerning PPG's motivations for sending it, the content of the email itself does not warrant corrective action.

Plaintiffs filed an Affidavit of Mark Knoke in connection with their motion to compel deposition. Dkt. No. 73-2.  Mr. Knoke states that he received the email from McKinley and, as a result of the email, he "was scared of retaliation by PPG Industries and did not want to join the lawsuit."  *Id*. ¶ 5.  Knoke states that he did, nevertheless, join the lawsuit.  *Id*. ¶ 10.  Knoke also states that he "spoke with two other potential plaintiffs "who were also both scared by the email and reluctant to join the lawsuit."  *Id*. ¶ 9.  According to Knoke, one of those individuals did join the lawsuit and the other did not.  *Id*. ¶ 10.

Knoke's affidavit does not warrant sanctioning PPG or ordering a corrective notice.  He joined the action after receiving the email, which suggests that the email was not in fact misleading or intimidating to him.   While evidence that potential plaintiffs were in fact intimidated or misled by the email might be relevant to determining whether the email in fact undermined the Court's notice, Knoke does not identify who was scared by the email, what portion of the email "scared" them, or why.[3]  Knoke's conclusory assertions do not counterbalance the fact that the email does not, on its face, undermine the Court's notice.

## II. THE EMAIL DID NOT VIOLATE THE STIPULATION

It is undisputed that the email was sent on May 15, 2014, and the stipulated opt-in period, during which the parties were prohibited from communicating with the potential plaintiffs, did not commence until May 21, 2014.  Accordingly, PPG's letter did not violate the letter of the stipulation.  Plaintiffs argue that the email nonetheless violated the *spirit* of the stipulation because of its "potential chilling effect on the class."  Mot. at 6.  For the reasons stated above, I disagree.

## III. THE EMAIL DID NOT VIOLATE THE RULES OF PROFESSIONAL CONDUCT

The plaintiffs' argument that defendants are unauthorized to communicate with the potential plaintiffs is unconvincing.  Potential class members in a FLSA action are not considered

---

[3] To the extent that the employees would be afraid of retaliation of they identified themselves, plaintiffs could have sought to file their names under seal.

1 parties to the action until they opt-in. *See* § 216(b) ("No employee shall be a party plaintiff to any
2 such action unless he gives his consent in writing to become such a party."). This is distinct from
3 a Rule 23 class action, in which absent members are considered parties to the action. Accordingly,
4 unlike Rule 23 class members, potential plaintiffs in a FLSA action do not have an implicit
5 attorney-client relationship with the plaintiffs' counsel that limits unauthorized defense
6 communication with them. *Parks*, 235 F. Supp. 2d at 1083.

7 Plaintiffs cite *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662 (E.D. Pa. 2001) for the
8 proposition that potential class members should be afforded protection as parties implicitly
9 represented by counsel. No case in the Ninth Circuit has adopted *Dondore*'s reasoning, and one
10 expressly noted that *Dondore*'s reasoning is "contrary to California law" and that "*Dondore* has
11 not been generally accepted-"[t]he weight of authority seems unwilling to adopt the *Dondore*
12 view." *Castaneda v. Burger King Corp.*, 2009 WL 2382688 (N.D. Cal. July 31, 2009) (citing
13 *Parks*, 235 F.Supp.2d at 1084). Indeed, all the FLSA cases cited by plaintiffs discuss whether
14 defense communication was misleading, deceptive, or discouraged participation in the class; not
15 whether it was done without the authority of plaintiffs' counsel. *See, e.g., Parks,* 235 F. Supp. 2d
16 at 1085 (holding that defense communication with the putative class is permissible without
17 plaintiff counsel's permission if it does not "undermine or contradict the court's own notice");
18 *Maddox*, 499 F. Supp. 2d at 1344; *Billingsley,* 560 F. App'x at 922, 924; *Veliz*, 2004 WL
19 2623909, at *3.

20 **CONCLUSION**

21 The plaintiffs' motion for sanctions and corrective notice is DENIED. Dkt. No. 54. The
22 plaintiffs' motion to compel deposition is DENIED AS MOOT. Dkt. No. 73.

23 **IT IS SO ORDERED**.

24 Dated: August 21, 2014

WILLIAM H. ORRICK
United States District Judge

10